UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| GREGORY MAHRT,<br><br>　　　　Petitioner,<br><br>　v.<br><br>JEFFREY A. BEARD, Secretary of the California Department of Corrections and Rehabilitation, et al.,<br><br>　　　　Respondents. | No. 1:14-CV-1696 NJV<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |

In November 2012, Petitioner pleaded guilty in California Superior Court County of Sonoma to one count of being a felon in possession of a firearm and one count of being a felon in possession of ammunition. Petitioner also admitted a prior strike conviction for exploding a destructive device causing bodily injury. (Doc. 20-1, p. 14; CT 10-13; 1 RT at 3, 6-8.) The Superior Court sentenced Petitioner to serve two concurrent terms of 6 years in state prison. (Doc. 20-1, p. 5, 78; CT 47; 2 RT 29.)

Petitioner filed a direct appeal pursuant to *People v. Wende*, 25 Cal.3d 436 (1979) and the California Court of Appeal affirmed his conviction on November 27, 2013. (Doc. 20-1, p. 82, 95; Answer, Exh. 4.) Petitioner also filed a habeas corpus petition, which the Court of Appeal summarily denied on November 19, 2013. (Doc. 20-1, p. 101; Answer, Exh. 5.) On December 6, 2013, Petitioner filed a habeas corpus petition with the Supreme Court of California. (Doc. 20-3, p. 2; Answer, Exh. 6.) On February 19, 2014, the Supreme Court of California summarily denied the petition. (Doc. 20-3, p. 101; Answer, Ex. 7.) The present petition for writ of habeas corpus was

filed in this court on April 11, 2014.  (Doc. 1.)  The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. Section 636(c).

## STATEMENT OF THE FACTS

The California Court of Appeal summarized the facts and procedural background as follows:

The presentence report filed with the court by the probation department on May 16, 2013, which was used by the court to establish a factual basis for appellant's plea upon the stipulation of defense counsel, describes the pertinent facts as follows: "On 09/03/12 at approximately 10:00 p.m., deputies were dispatched to a residence on Magnolia Avenue in Petaluma regarding a verbal argument between a male and female over a gun.  As the deputies arrived at the residence, the defendant Gregory Mahrt walked outside and was detained and asked about the argument and the gun.  Mahrt was uncooperative and would not answer any questions.  When asked about the female reportedly involved in the argument, Mahrt reported she left the residence prior to their arrival.  Based on the possible domestic violence report and the mention of a deadly weapon, the deputies conducted a search of the residence.
Deputies began the search at the northernmost structure on the property which appeared to be a garage that had been converted to a room.  As the deputies approached the room, Mahrt began yelling that he did not want the deputies to enter his room.  Upon entry into the room, deputies observed several ammunition cans on the floor in the center of the room.  One of the cans was open and the deputy noticed it was full of miscellaneous calibers of ammunition.  Also noticed was what appeared to be an AR-15 Rifle on a shelf above the bed, which was later determined to be a replica.
A deputy then re-contacted the defendant and questioned his criminal conviction history, with Mahrt admitting he had a past felony conviction.  The defendant was placed under arrest for being a felon in possession of ammunition.  The search of the defendant's room continued as deputies located 11 cans of ammunition full of multiple calibers of ammunition and a guitar case that contained two firearms: a loaded shotgun with the barrel removed (barrel was in the case with the shotgun), and an AK-47 Rifle with a fully loaded 30-round magazine in the case.  Also located were 19 capacity rifle magazines in the room.
Mahrt was interviewed regarding the firearms and the ammunition. He stated he was "holding" them for a friend but would not identify who.  He also confirmed he had sole access to the room and everything in the room belonged to him.
Mahrt was transported to the Sonoma County Jail.  The firearm and ammunition seized were booked into evidence. The deputy also photographed a handwritten statement on the door that read "In times of tyranny and injustice, when law oppresses the people, the outlaw takes his place in history."
Appellant was declared a ward of the court in 1984 and placed on juvenile formal probation, which he violated.  He has a long history of substance abuse and a lengthy subsequent record of misdemeanor and felony convictions as a juvenile and adult.  Two felony convictions resulted in commitments to the California Department of Corrections and Rehabilitation.
One such commitment, in 1988, involved the throwing of a pipe bomb through the window of a video store, injuring one of the owners (former § 12309).  The other, in 2001, involved possession of magazines for a Glock pistol, a billy club, a variety of explosive devices, 600 rounds of ammunition, a Ruger mini 14 semi-automatic .223 caliber rifle fitted with a flash suppressor, and a loaded 30/30 Marlin long rifle (§§ 12021, subd. (a)(1), 12312, 1170.12).  The last named weapon was found in appellant's vehicle after he fled from CHP officers who attempted to conduct a traffic stop.  When booked for this offense appellant "told the CHP officer that if given the chance, he would have shot the CHP Officer."
On September 5, 2012, the Sonoma County District Attorney filed a two count complaint charging appellant with being a felon in possession of a firearm (§ 29800, subd. (A)(1), and possession of ammunition (§ 30305, subd. (a)(1) despite being prohibited from possession such items due to a 1989 conviction for violation of former section 12309, exploding a

 destructive device causing bodily injury.  The complaint also alleged that due to the latter violation appellant was ineligible for probation (§ 1170, subd. (h)(3)), and that the violation of former section 12309 was a prior strike conviction (§ 1170.12),
On November 2, 2012, the trial court denied appellant's *Marsden* motion to replace his deputy public defender.
On November 30, 2012, pursuant to a plea agreement, appellant waived his right to a preliminary hearing and signed a 4-page "*Tahl* rights waiver form" waiving his constitutional rights, as to which he was orally admonished by the court, and plead guilty to both counts of the complaint and admitted the prior strike conviction. The agreement provided that appellant's maximum exposure was a sentence of seven years and four months, but that sentencing was otherwise open to the court.
Before sentencing, appellant moved to strike the prior strike conviction pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.   The court denied the request, denied probation, and sentenced appellant to the aggravated term of six years in state prison for the offense charged in count 1 and a concurrent aggravated sentence of six years for that charged in count 2. The court imposed a restitution fine of $3,360, and $40 court security fee, and a $30 criminal conviction fee.  Credit was awarded for 175 days of time served and 174 conduct credit.

Answer, Exh. 4 at 1-4.

## LEGAL STANDARD

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  This case is governed by the Antiterroism and Effective Death Penalty Act of 1996 ("AEDPA"), which imposes a "highly deferential" standard for evaluating state court rulings and "demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam).  A district court may not grant a petition for writ of habeas corpus challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  A federal court must presume the correctness of the state court's factual findings, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1)

A defendant who pleads guilty generally cannot later raise in habeas corpus proceedings independent claims relating to the deprivation of constitutional rights that occurred before the plea

3

of guilty. *See Haring v. Prosise*, 462 U.S. 306, 319-20 (1983) (guilty plea forecloses consideration of pre-plea constitutional deprivations); *United States v. Jackson,* 697 F.3d 1141, 1144 (9th Cir. 2012) (by pleading guilty defendant waived right to challenge pre-plea violation of Speedy Trial Act); *Moran v. Godinez*, 57 F.3d 690, 700 (9th Cir. 1994) (amended June 2, 1995) (refusing to consider contention that petitioner's attorneys were ineffective because they failed to attempt to prevent the use of his confession as pre-plea constitutional violation). In *Tollett v. Henderson*, 411 U.S. 258, 266-67 (1973), the Supreme Court explained:

> [w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea.

A plea is "involuntary" if it is the product of threats, improper promises, or other forms of wrongful coercion, *Brady v. United States*, 397 U.S. 742, 754-55 (1970), and is "unintelligent" if the defendant is without the information necessary to assess intelligently "the advantages and disadvantages of a trial as compared with those attending a plea of guilty,"*id.* at 755. Where a petitioner challenges his guilty plea based on counsel's advice to plead, the appropriate question is whether "(1) his 'counsel's representation fell below an objective standard of reasonableness,' and (2) 'there is a reasonable probability that, but for [his] counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Womack v. Del Papa*, 497 F.3d 998, 1002 (9th Cir. 2007) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Under the AEDPA, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard. . . . A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."  *Harrington v. Richter*, 131 S.Ct. 770,  785 (2011). This standard applies to a state court's summary denial of an ineffective assistance claim, and requires the habeas court to determine what theories could have supported the state court's decision on each prong of the *Strickland* inquiry, and then determine whether those theories were reasonable. *Id.* at 784, 786.

4

**DISCUSSION**

Petitioner challenges his guilty plea by alleging that it resulted from the deprivation of effective assistance of counsel. Petitioner contends that defense counsel was constitutionally ineffective for failing to move to suppress the evidence against him in the form of firearms and ammunition. He argues that it is reasonably probable that if defense counsel had properly moved to suppress the evidence, the charges against Petitioner could not have been proven, and the charges against him would have been dropped. Alternatively, he argues that it is reasonably probable that had defense counsel properly moved to suppress the evidence, defense counsel would have been able to negotiate a better plea agreement. Petitioner claims therefore, that he was prejudiced by the failure of counsel to move to suppress the evidence. By arguing that he would have not entered into the plea agreement if defense counsel had properly moved to suppress the evidence of the guns and ammunition, Petitioner is challenging the intelligent nature of his plea. The court therefore concludes that Petitioner's claim is cognizable on habeas corpus. *See, generally*, *Premo v. Moore*, 131 S.Ct. 733 (2011) (addressing claim on appeal of denial of habeas corpus petition of ineffective assistance of counsel regarding assessment of plea bargain without seeking suppression of a confession); *Womack v. Del Papa*, 497 F.3d 8998 (2007) (addressing claim of ineffective assistance of counsel regarding entry of guilty plea on appeal of denial of petition for writ of habeas corpus).

The court notes initially that it is not enough to support the prejudice prong of ineffective assistance of counsel in a challenge to a guilty plea that a petitioner show a reasonable possibility that he would have obtained a better plea agreement but for counsel's errors. *Premo v. Moore,* 131 S.Ct. 733, 745 (2011) (citing *Hill v. Lockhart* standard set forth above). Thus, Petitioner's alternative claim is insufficient to support habeas relief. Rather, Petitioner must show that it is reasonably probable that if defense counsel had moved to suppress the evidence, he would not have pleaded guilty, or, as Petitioner frames it, the charges against him would have been dropped.

Petitioner raised his claim regarding his guilty plea in his petitions before the California Court of Appeal and Supreme Court of California. Neither of those courts, however, addressed the merits of Petitioner's claim. Where the state court gives no reasoned explanation of its decision on a petitioner's federal claim and there is no reasoned lower court decision on the claim, an

5

"independent review of the record" is the only means available to a district court for purposes of determining whether the state court's decision was objectively reasonable. *See Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). Accordingly, this court will conduct an independent review of the record to determine whether the state court's decision was an unreasonable application of clearly established federal law.

Warrantless searches and seizures inside homes are presumptively unreasonable under the Fourth Amendment. *Payton v. New York*, 445 U.S. 573, 586 (1980). Respondent contends, however, that the warrantless search of Petitioner's room was valid, and that a suppression motion would have been denied under the facts of this case. Based on a neighbor's report of an argument regarding a gun, sheriff's deputies detained Petitioner and conducted a protective sweep of his room. During that sweep, they discovered an open can of ammunition in plain sight. Petitioner was then placed under arrest for being a felon in possession of ammunition. Respondent argues that the initial entry into the garage was constitutional as a protective sweep by officers with a reasonable belief, based on specific and articulable facts, that the area swept harbored an individual posing a danger to the officer or others, citing *Buie v. Maryland*, 494 U.S. 325, 327 (1990). As Petitioner argues, however, *Buie* addresses the protective sweep of the interior of a home after a suspect has been arrested in the home. Here, officers swept an interior living space while Petitioner was detained outside. While Respondent argues that sound policy supports "the rule" that a protective sweep may be undertaken following a detention outside the home, Respondent cites no authority establishing such a rule. Respondent makes no showing that this was established federal law at the time of Petitioner's arrest. Further, the reasoning in *Buie* was based on the "interest of the officers in taking steps to assure themselves that the house in which a suspect is being, or has just been, arrested is not harboring other persons who are dangerous and who could unexpectedly launch an attack." *Id.* at 333. No such interest is claimed here: there is no mention of a concern for officer safety in either the Court of Appeal's decision on direct appeal or the incident report. (Doc. 20-2.) Thus, Respondent's argument that the officers believed the area in question harbored an individual who posed a danger to others has no basis in fact. Finally, the second case relied on by Respondent, *People v. Celis*, 33 Cal.4th 667, 674, 678-80 (2004), expressly does not reach the issue of the entry

6

into a house for a protective sweep after the suspect has been arrested outside the house. *Id*. at 679. The court thus finds the "protective sweep" justification offered by Respondent for the warrantless search of Petitioner's home to be without merit.

The other possible basis for a warrantless search of a residence is the existence of an exigent circumstance such that the needs of law enforcement are "so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Mincey v. Arizona*, 437 U.S. 385, 393-94 (1978); *see Kirk v. Louisiana*, 536 U.S. 635, 638 (2002) ("As *Payton* makes plain, police officers need either a warrant or probable cause plus exigent circumstances in order to make a lawful entry into a home.") One of the recognized exigencies obviating the need for a warrant is the need to provide emergency assistance to persons who are seriously injured or threatened with serious injury. *Mincey*, 437 U.S. at 392. The reasonableness of a warrantless search in such a situation is analyzed objectively, regardless of the individual officer's state of mind. *Brigham City, Utah v. Stuart*, 547 U.S. 398, 404 (2006) (quoting *Scott v. United States*, 436 U.S. 128, 138 (1978). Thus, "[t]he officer's subjective motivation is irrelevant." *Id.*, citing *Bond v. United States*, 529 U.S. 334, 338, n.2 (2000). In *Brigham City, Utah*, 547 U.S. at 398, the Court found the officers' warrantless entry into a private home reasonable where they responded to a call about a loud party, heard shouting inside the home, proceeded down the driveway, and observed juveniles drinking beer. The officers looked through a screen door and observed an altercation between four adults and a juvenile, and saw the juvenile punch one of the adults, causing him to spit blood in the sink. The officers opened the screen door, and announced their presence twice, after which the tumult gradually subsided. The officers arrested the adults for contributing to the delinquency of a minor, and other related offenses. The Court found that given the tumult in the house when the officers arrived, "it was obvious that knocking on the front door would have been futile. Moreover, in light of the fracas they observed in the kitchen, the officers had an objectively reasonable basis for believing both that the injured adult might need help and that the violence was just beginning. Nothing in the Fourth Amendment required them to wait until another blow rendered someone unconscious, semiconscious, or worse before entering." *Id.* at 399.

7

The facts in the case before the court were substantially different, with no indication of ongoing violence in the home. Deputies went to the residence in response to a report of an argument about a gun. They arrived at the scene, and encountered Petitioner, who walked outside the residence. While Petitioner was uncooperative and "would not answer any questions," Petitioner did tell the officers that the woman involved in the argument had left the residence prior to their arrival. Officers did not report observing any type of altercation, receiving reports of a physical altercation, or observing any signs of violence or any facts that would have reasonably lead them to believe that an injured person requiring emergency assistance was inside Petitioner's room. Every report of a domestic argument does not create an emergency exigent circumstances justifying a warrantless search. Nor does the officers' speculation that the case could have involved a domestic violence situation justify, on its own, a warrantless search.[1] *See Mincey,* 98 S.Ct. at 394 (rejecting contention in a homicide case that the seriousness of the offense under investigation creates exigent circumstances that justifies a warrantless search under the Fourth Amendment.)

Similarly, it is not per se illegal to possess a gun in this country, nor is it per se illegal to argue about one. Thus, the mention of a deadly weapon in a domestic argument, without more, does not establish a basis for a warrantless search.[2] *See Payton*, 445 U.S. at 587–588 ("absent exigent circumstances, a warrantless entry to search for weapons or contraband is unconstitutional even when a felony has been committed and there is probable cause to believe that incriminating evidence will be found within.") (footnote omitted). Indeed, such a rule would constitute a shocking incursion into the right of privacy in the home guarded by the Fourth Amendment. This court therefore concludes that, under the facts of this case, the deputies' warrantless search of Petitioner's residence was unreasonable under the Fourth Amendment.

Finally, there is nothing in the record demonstrating that the failure to file a motion to suppress constituted sound trial strategy on the part of defense counsel. It is undisputed that

---

[1] The court notes that the record contains a copy of the Incident Report, in which the reporting officer stated, "[d]ue to the report of a possible domestic incident and the mention of a deadly weapon, Deputy Jones and I conducted a protective sweep of the property." (Doc. 20-2, p. 65.)

[2] The court notes that there is no allegation that anyone was <u>threatened</u> with the use of a gun during the alleged domestic dispute.

8

Petitioner "pled to the sheet," with no reduction in possible sentence. (Doc. 20-1, p. 17.) Nothing in the record shows that Petitioner received a benefit from doing so. There are no facts, for example, showing that the prosecution refrained from filing any additional charges in exchange for the guilty plea. *See generally, Premo*, 131 S.Ct. at 126 (claim of ineffective assistance of counsel rejected where early entry of guilty plea was made in exchange for minimum sentence and potential testimony of two witnesses to an additional confession negated effect of possible exclusion of confession to police.) The paucity of the record makes it impossible for this court to conclude that trial counsel consciously chose not to file a motion to dismiss, based on the benefit derived from refraining to do so.

Having considered what theories could have supported the state court's summary denial of Petitioner's ineffective assistance claim, and granting that denial all due deference, this court concludes that there is no reasonable argument that counsel satisfied *Strickland's* standard. *See Harrington*, 562 U.S. at 131 S.Ct. (standard under AEDPA is not whether counsel's action were reasonable, but whether there is an reasonable argument that counsel satisfied *Strickland's* deferential standard). Under the prejudice prong of *Strickland*, petitioner had the burden of showing that there was reasonable probability that, but for [his] counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Womack*, 497 F.3d at 1002 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Under the analysis of Fourth Amendment law set forth above, the court finds no theory under which the state court could have reasonably failed to conclude that but for counsel's failure to file a motion to suppress, Petitioner would not have pleaded guilty and would have insisted on going to trial. *See Womack*, 497 F.3d at 1002. No other evidence supported the charges against Petitioner, and had the evidence been ruled inadmissible, the state would have been forced to drop the charges. The inevitable discovery doctrine would not have prevented suppression of the evidence under the facts of this case, as the officers had no other basis for entering Petitioner's room. *See United States v. Young*, 573 F.3d 711, 721 (9th Cir. 2009) (inevitable discovery exception did not apply where police conducted warrantless search of hotel room, not incident to arrest). Therefore, the evidence of firearms and ammunition seized by the deputies would have been suppressed. *See United States v. Crawford*, 372 F.3d 1048, 1054 (9th Cir.2004) ("[T]he Fourth

9

Amendment's exclusionary rule applies to statements and evidence obtained as a product of illegal searches and seizures. Evidence obtained by such illegal action of the police is 'fruit of the poisonous tree,' warranting application of the exclusionary rule.") Under these circumstances, this court must conclude that the Supreme Court of California's denial of Petitioner's claim of ineffective assistance of counsel constituted an unreasonable application of clearly established federal law. *See Harrington v. Richter*, 131 S.Ct. at 785.

## CONCLUSION

In light of the foregoing, the petition for a writ of habeas corpus is hereby GRANTED. Respondent shall release Petitioner from custody, unless, with thirty days of the filing of this order and entry of judgment thereon, Respondent has filed an appeal with the United States Court of Appeals for the Ninth Circuit or the State has set a date for a new trial.

Immediate release is hereby DENIED.

The Clerk shall close the file.

IT IS SO ORDERED.

Dated: June 26, 2015

NANDOR J. VADAS
United States Magistrate Judge